IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

RONNIE LUNA                                                                                       PLAINTIFF

v.                                    Civil No. 4:22-CV-04098-SOH-BAB

ROBERT GENTRY (Sheriff),                                                                DEFENDANTS
ARENAS ROMONA,
DEPUTY CHRIS WALCOTT (Jail
Administrator),
JAILER BLAKE REEL,
TAMMY FOWLER (Nurse),
TAYLOR GENTRY (Jailer),
JAILER BRANDON,
EULEPERIO HERNANDEZ (Program
Coordinator),
BARBARA VALENTINE,
STEVEN FOLTZ (Turn Key),
SYNAMON GARETTE

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court are Defendant Fowler's Motion to Dismiss or, in the alternative, Motion to Consolidate (ECF No. 14) and Defendant Foltz' Motion to Dismiss or Motion for Summary Judgment. (ECF No. 22).

### I.  BACKGROUND

Plaintiff, Ronnie Luna, attempted to file this action on his own behalf and on behalf of 20 other inmates of the Sevier County Sheriff's Office ("SCSO") on September 13, 2022. (ECF No. 1). The case was provisionally filed, and separate cases opened for each of the inmates. (ECF No. 2). The provisional filing Order directed each Defendant, including Ronnie Luna, to file an

1

Amended Complaint. (*Id*.). Plaintiff filed an Amended Complaint on October 4, 2022. (ECF No. 4). Due to deficiencies in the First Amended Complaint, the Court entered an Order directing Plaintiff to submit a Second Amended Complaint on October 27, 2022. (ECF No. 8). Plaintiff did so on November 22, 2022. (ECF No. 9). In the Amended Complaint, he identifies himself as a pretrial detainee. (*Id*. at 2).

For his first claim, Plaintiff lists all named Defendants in this case, but does not indicate how each Defendant was personally involved in these alleged wrongful actions. (*Id.* at 6). Plaintiff alleges that on August 6, 2022, the "Defendants knew" there was an inmate complaining of having COVID-19 symptoms and they failed to check or isolate the inmate, stating it would cause too much stress for Defendants. (*Id*.). Instead, Defendants stated they would have the inmates "shelter in place" and let COVID-19 "run its natural course," because "that's what the world decided what's best." (*Id*.). They further stated it would cost too much to test everyone, and inmates would be charged for the COVID-19 vaccine. (*Id*. at 6-7). Plaintiff further alleges he was subjected to unsanitary conditions of confinement because there was "reckless disregard for PPE," he was denied disinfectants, they failed to reduce the inmate population to permit quarantining. (*Id*. at 7). Finally, Plaintiff alleges he was exposed to COVID-19 and does not know "the extent of bodily damage or chronic effects that our bodies may suffer in the future." (*Id*.). Plaintiff does not allege that he contracted COVID-19 in this first claim.

Plaintiff proceeds against Defendants in their official and individual capacities for this claim. (*Id*.). As his official capacity claim, Plaintiff alleges "they never isolated anyone or put anyone in quarantine." (*Id*.). Based on inmate grievances, medical requests, conversations with staff, and verbal complaints to staff, "Sevier County was fully aware of our serious medical

2

conditions and deliberately chose to ignore and deny proper COVID-19 testing and medical care [and PPE]." (*Id.*).

For his second claim, Plaintiff again names all Defendants named in this case and lists August 6, 2022, as the date of occurrence. (*Id.* at 8). Plaintiff largely repeats the allegations in his first claim but provides additional details. Except for Defendant Fowler, Plaintiff does not indicate how each Defendant was personally involved in these alleged wrongful actions. He alleges an inmate trustee exhibited COVID-19 symptoms and was "very ill." (*Id.*). The trustee was placed in quarantine, but "they" refused to test him. (*Id.*). On or around August 6 and August 7, "some" other inmates were running high fevers, and Plaintiff and other inmates wanted their temperature checked and tested for COVID-19. Defendants refused to do so for "3 or 4 days." (*Id.*). After the inmates threatened to contact the Centers for Disease Control and Prevention ("CDC") and the Bureau of Prisons, Defendant Fowler "finally come in and asked who wanted to be seen" on August 10, 2022. (*Id.*). Fowler told them they would shelter in place because "that was what the whole world decided was best," and further told them inmates would not be quarantined because it would cause staff too much stress to separate them. (*Id.* at 8-9). She then left, came back, and told them she would test them, but they would be charged for the tests. (*Id.* at 9).

Plaintiff proceeds against Defendants in their official and individual capacities for this claim. (*Id.* at 10). As his official capacity claim, Plaintiff alleges 30 out of 36 inmates, including Plaintiff, tested positive for COVID-19, and their temperatures were only checked one time after that positive test. (*Id.*). "The nurse" told them she was going to give them a medication not prescribed by the CDC. (*Id.*). After taking the medication, some inmates vomited blood and others had blood in their stool. (*Id.*). Plaintiff does not allege that he suffered these symptoms. Instead,

3

he alleges he had "pains," and stopped taking the medication after two days. (*Id*. at 9). Plaintiff does not identify the medication.

For his third claim, Plaintiff again names all Defendants in this case and lists August 6, 2022, as the date of occurrence, but does not indicate how each Defendant was personally involved in these alleged wrongful actions.. (*Id*. at 10-11). In the section of the form where he describes his claim, Plaintiff states 30 inmates tested positive for COVID-10 on August 10, 2022, but the SCSO hid the infections from inmates, inmate families, defense attorneys, and the Arkansas Department of Health. (*Id*. at 11). Plaintiff then states the facility failed to administer COVID-19 tests on August 10, 2022, despite clear symptoms.[1] (*Id*.). Plaintiff alleges he asked to see a doctor but was only seen one time by "the nurse" who was "texting my situation with a doctor, Steven Foltz of Turn Key." (*Id*.).

Plaintiff proceeds against Defendants in their official and individual capacities for this claim. (*Id*. at 10). As his official capacity claim, Plaintiff repeats his allegations that testing and medical care were denied. (*Id*.).

Plaintiff lists additional claims four through six, but these claims merely repeat his prior allegations with different characterizations of the claim such as "turned a blind eye," cruel and unusual punishment, and wanton infliction of pain. (*Id*. at 12-17).

Plaintiff seeks compensatory and punitive damages in the amount of $2.5 million dollars. (*Id*. at 18).

Defendant Fowler filed her Motion to Dismiss or, in the alternative, Motion to Consolidate on January 31, 2023. (ECF No. 14). She argues a Motion to Dismiss is appropriate as Plaintiff

---

[1] This allegation directly contradicts several of Plaintiff's allegations that tests were administered on that date and inmates tested positive. It will not be considered further.

failed to plead sufficient facts to state claim upon which relief can be granted against her. (*Id*. at 1). Alternatively, Defendant Fowler asks that this case be consolidated with *Luna v. Gentry*, Case No. 4:22-cv-04048. (*Id*.). In support of the Motion, Defendant Fowler notes that both of these cases involve conditions of confinement and there are seven common Defendants named in both cases. (*Id*. at 1-3).

Defendant Foltz filed his Motion to Dismiss or Motion for Summary Judgment on February 24, 2023. (ECF No. 22). He argues Plaintiff's claims should be dismissed against him pursuant to Fed. R. Civ. P 12(b)(6) and 56 because materials presented outside of the pleadings conclusively prove that Defendant Foltz was not providing medical care at the Sevier County Detention on the dates alleged in Plaintiff's Complaint. (*Id*.). Specifically, Defendant Foltz provided a sworn affidavit stating he was a contracted agent with Southern Health Partners, the contract between the Sevier County Detention Center and Southern Health Partners ended in May 2019, and he did not provide medical services to the Sevier County Detention Center after May 2019. (ECF No. 23-1). He was not, therefore, providing medical services at the Sevier County Detention Center on the dates alleged in Plaintiff's Complaint. (*Id*.).

Plaintiff filed his Responses to both Motions on March 30, 2023. (ECF Nos. 33, 34). In his Response to Defendant Foltz' Motion, Plaintiff provides a sword affidavit stating "[d]uring the acts or omissions of my claim Nurse Fowler was texting a doctor concerning my medical care." (ECF No. 33 at 2). Plaintiff further notes Defendants' Answer states Steven Foltz provided medical care at the facility.[2] (*Id*.). Plaintiff argues Defendant Foltz was therefore personally

---

[2] Plaintiff does not provide an ECF reference for this Answer. As Foltz did not file an Answer, it appears that Plaintiff is referring to the Sevier County Defendants' Answer, which states that Turn Key Medical is contracted to provide medical to inmates at the facility, and the supervising medical professional is Steven Foltz. (ECF No. 12).

5

involved in his claims. (*Id*. at 3). In his Response to Defendant Fowler's Motion, Plaintiff alleges he contracted COVID-19 while under her care, and her Motion Brief (ECF No. 16) admits to her personal involvement in these claims. (ECF No. 34). Plaintiff does not elaborate on this point.

## II. LEGAL STANDARD

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (*quoting Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. While the Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff must allege sufficient facts to support his claims. *See Stone v. Harry,* 364 F.3d 912, 914 (8th Cir. 2004).

## III. ANALYSIS

### A. Defendant Fowler

Plaintiff failed to state a plausible individual capacity claim against Defendant Fowler for deliberate indifference to his medical needs. The Eighth Amendment[3] prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim,

---

[3] The Eighth Amendment deliberate indifference standard applies to all denial of medical care claims including those by arrestees and pretrial detainees. *Carpenter v. Gage,* 686 F.3d 644, 650 (8th Cir. 2012) (noting that while an arrestee's denial of medical care is properly analyzed under the Due Process Clause of the Fourteenth Amendment the analysis parallels that under the Eighth Amendment).

Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.' " *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted).

"Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id.*

It is well settled that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* (internal citations omitted).  Despite this, issues of fact exist when there is a question of whether medical

7

staff exercised independent medical judgment, and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05. However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials 'ignored an acute or escalating situation or that [these] delays adversely affected his prognosis[,]' " *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (citations omitted), unless the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub*, 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999)); *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995); *cf. Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

For the purpose of this Motion, the Court will accept as true Plaintiff's allegation that he tested positive for COVID-19. Thus, Plaintiff meets the first, objective prong of the deliberate indifference test. Plaintiff's allegations, however, fail to meet the second, subjective prong of the test. Plaintiff's claims against Defendant Fowler are that she came to Plaintiff's living area[4] on August 10, 2022, told Plaintiff and other inmates they would shelter in place because "that was

---

[4] It is not clear from Plaintiff's Complaint if he was incarcerated in a cell or a larger "pod" or other group living arrangement in the facility.

8

what the whole world decided was best," and further told them inmates would not be quarantined because it would cause staff too much stress to separate them. She then left, came back, and told them she would test them, but they would be charged for the tests. Thus, after a delay between August 5th or 6th, when Plaintiff alleges an inmate first exhibited symptoms that could be attributed to COVID-19, Defendant Fowler told the inmates they would shelter in place, would be tested for COVID-19, and would be charged for the tests. Allegations such as these — at most — suggest negligence, which is not sufficient to sustain a deliberate indifference claim. *See Hill v. Page*, Case No. 321CV00046BRWJJV, 2021 WL 2677359, at *1 (E.D. Ark. June 8, 2021), *report and recommendation adopted*, Case No. 321CV00046BRWJJV, 2021 WL 2666851 (E.D. Ark. June 29, 2021), *aff'd*, 21-2782, Case No. 2021 WL 6808426 (8th Cir. Dec. 23, 2021) (collecting cases holding that inconsistent use of masks and other COVID prevention actions on a few occasions were mere negligence.)). As such, Plaintiff's individual capacity claims against Defendant Fowler are subject to dismissal.

### B. All Other Named Defendants

Under the Prison Litigation Reform Act, 42 U.S.C.A. § 1997e, "The court shall *on its own motion* . . . dismiss any action brought with respect to prison conditions under section 1983 of this title . . . if the court is satisfied that the action . . . is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 42 U.S.C.A. § 1997e(c)(1). Section 1997e(c) is applicable throughout the life of a case and provides the District Court with the authority to *sua sponte* dismiss at any time during litigation if it becomes apparent that this dismissal provision has been satisfied. *Beenick v. LeFebvre*, 684 F.App'x. 200, 204 (3d Cir. 2017) (unpublished); *see also Williams v. Cox*, 3:20-CV-00070-JTR, 2022 WL 883026, at n. 8, *4 (E.D. Ark. Mar. 24, 2022) (dismissing inmate's case at the summary

9

judgment stage under § 1997e(c)(1) and collecting cases supporting a District Court's ability to do so *sua sponte*).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather than to vindicate a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 464 (E.D.N.C. 1987); *In re Tyler*, 839 F.2d 1290, 1293-94 (8th Cir. 1988). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (*quoting Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). This means "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Jackson*, 747 F.3d at 544 (cleaned up). However, the complaint must still allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

Plaintiff failed to state how any of the named Defendants other than Fowler were personally involved in any violation of his constitutional rights. "Liability under Section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370 (1976)). Thus, to state a cognizable Section 1983 claim, a complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, that allegedly violated the plaintiff's

federal constitutional rights. Plaintiff has not alleged a causal link between any of the remaining named Defendants and his claims. *See Martin*, 780 F.2d 1337. (Even a pro se Plaintiff must allege specific facts sufficient to state a claim). As such, Plaintiff's individual capacity claims against all remaining Defendants are subject to dismissal.

### C. Official Capacity Claims

A governmental entity can be held liable only when the constitutional violation was caused by a policy, custom, or failure to train or supervise. *Monell v. Dep't. of Soc. Servs.,* 436 U.S. 658, 691 (1978). Plaintiff alleges that on a single day in August (or perhaps several days depending on which portion of each claim is referenced), SCSO staff failed to take preventative measures when they knew COVID was in the building. He further alleges inmates were not quarantined and PPE, cleaning supplies, and testing was not offered until "3 or 4" days later on August 10, 2022. Finally, he alleges a nurse handed out a medication which was not approved by the CDC and which gave him "pains." Plaintiff does not identify the medication.

Plaintiff identifies no policies responsible for any of his official capacity claims. Further, his allegations concerning the lack of COVID response and the denial of medical care over a period of a day (or several days), is insufficient to establish the existence of an unconstitutional custom. *See Johnson v. Douglas County Med. Dept.*, 725 F.3d 825, 828 (8th Cir. 2013) (to establish the existence of an unconstitutional custom, incidents must occur "over a course of time sufficiently long to permit notice of, and then deliberate indifference to or tacit authorization of, the conduct by policymaking officials.").

### D. Defendant Foltz' Motion

Based on the above analysis, Defendant Foltz' Motion is now moot, and should be denied without prejudice as to refiling in the event any portion of this Report and Recommendation is not adopted.

## IV.  CONCLUSION

Accordingly, it is recommended that:

1. Defendant Fowler's Motion to Dismiss (ECF No. 14) be GRANTED.

2. Defendant Foltz' Motion to Dismiss or Motion for Summary Judgment (ECF No. 22) be DENIED as MOOT WITHOUT PREJUDICE AS TO REFILING.

3. Plaintiff's Amended Complaint (ECF No. 9) be DISMISSED WITHOUT PREJUDICE pursuant to 42 U.S.C.A. § 1997e for failure to state a claim upon which relief may be granted.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **27th day of April 2023**.

/s/ *Barry A. Bryant*

HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE