IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

RONNIE ANTHONY LUNA                                                                           PLAINTIFF

v.                                              Case No. 4:22-cv-04098

ROBERT GENTRY (Sheriff); ROMONA ARENAS;
DEPUTY CHRIS WALCOTT (Jail Administrator);
BLAKE REEL (Jailer); TAMMY FOWLER (Nurse);
TAYLOR GENTRY (Jailer); BRANDON WILLIAMS
(Jailer); ELEUPERIO HERNANDEZ (Program
Coordinator); BARBERA VALENTINE; STEVEN
FOLTZ (Turn Key Health); & SYNAMIN GARETTE                                            DEFENDANTS

**ORDER**

Before the Court is the Report and Recommendation ("R&R") filed April 27, 2023, by the Honorable Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas. ECF No. 35.  Judge Bryant recommends that: (1) Defendant Fowler's Motion to Dismiss (ECF No. 14) be granted; (2) Defendant Foltz's Motion to Dismiss or Motion for Summary Judgment (ECF No. 22) be denied as moot without prejudice as to refiling; and (3) Plaintiff's Second Amended Complaint (ECF No. 9) be dismissed without prejudice pursuant to 42 U.S.C.A § 1997(e) for failure to state a claim upon which relief may be granted.  ECF No. 35.  Plaintiff, proceeding *pro se*, has responded with objections.  ECF No. 40.  The Court finds the matter ripe for consideration.

**I. BACKGROUND**

This is a civil rights action filed under 42 U.S.C. § 1983.  Plaintiff alleges that Defendants violated his constitutional rights by delaying or denying medical treatment while he was incarcerated at Sevier County Detention Center ("SCDC") in August of 2022.  The Court will summarize Plaintiff's account of the events and procedural timeline.  Judge Bryant provides a more detailed version in his R&R.  ECF No. 35, p. 1–6.

**A. Factual Background**

In his Second Amended Complaint (ECF No. 9), Plaintiff, listing himself as a pretrial detainee, alleges that between the dates of approximately August 5, 2022, to August 12, 2022, Defendants were aware of SCDC inmates "medical conditions and deliberately chose to ignore and deny proper COVID-19 testing and medical care."[1] ECF No. 9, p. 7. Plaintiff alleges that on August 5, 2022, a very ill inmate showing symptoms of COVID-19 was placed in quarantine but was refused a COVID test. On or around August 6, 2022, Plaintiff and other inmates exhibited clear symptoms of COVID-19. Plaintiff and the other inmates complained and repeatedly asked to be tested for COVID-19 and to have their temperatures checked for three or four days. Defendants ignored their requests. On August 9, 2022, Plaintiff and other inmates threatened to write to the Centers for Disease Control and Prevention ("CDC") or the Federal Bureau of Prisons ("BOP") to let them know what was taking place at SCDC. Plaintiff asserts that on August 10, 2022, at 11:10 AM, Defendants Tammy Fowler ("Fowler"), a nurse at SCDC, and Taylor Gentry ("Gentry"), a jailer at SCDC, asked who wanted to be seen. Allegedly, Defendant Fowler stated that the inmates were going to "shelter in place because this [is] what the whole world has decided was best," and that inmates were "not going to be quarantined because it would cause [the SCDC staff] too much stress to separate" the inmates. *Id.* at p. 8–9. Defendant Fowler expressed to Plaintiff and his fellow inmates that they would be tested for COVID-19, but that they would be charged for the tests "because it would cost the jail too much money."

Plaintiff asserts that on August 10, 2022, thirty out of thirty-six inmates, including himself, tested positive for COVID-19, but the SCDC hid the infections from inmates, inmates' families, defense attorneys, and the Arkansas Department of Health. *Id.* at p. 11. Plaintiff also contradictorily states that the facility failed to administer COVID-19 tests on August 10, 2022, despite clear

---

[1] Plaintiff lists August 6, 2022, as the date of occurrence for each of his six claims, but refers to a window of time between August 5, 2022, and August 12, 2022, when recounting the facts throughout his Second Amended Complaint. ECF No. 9.

symptoms.[2]  *Id.*  Plaintiff alleges that he asked to see a doctor but was only seen one time by "the nurse" who was texting with a doctor, Defendant Steven Foltz ("Foltz") of Turn Key Health.[3]  *Id.*  Plaintiff then alleges that "the nurse" stated that she was going to give the inmates "medication that was not prescribed by the CDC."  Plaintiff claims he stopped taking the medication after two days because it gave him pain in his right side and caused other inmates to have blood in their stool and throw up blood.  *Id.* at p. 14–15.

### B. Procedural Background

On September 13, 2022, Plaintiff attempted to file this action on his own behalf and on behalf of twenty other inmates.  ECF No. 1.  The case was provisionally filed,[4] and the provisional filing Order directed each inmate, including Plaintiff, to file an Amended Complaint.  ECF No. 2.  On October 4, 2022, Plaintiff filed an Amended Complaint.  ECF No. 4.  On November 22, 2022, following a court order, Plaintiff submitted a Second Amended Complaint due to deficiencies in his First Amended Complaint.  ECF No. 9.  Plaintiff's Second Amended Complaint remains the operative complaint.  ECF No. 9.

Plaintiff alleges six claims in his Second Amended Complaint.  ECF No. 9.  Plaintiff proceeds against Defendants in their individual and official capacities for each claim.  For his first claim, Plaintiff lists all named Defendants alleging they denied or delayed his medical care, but does not indicate how each Defendant was personally involved in the alleged denial or delay.  *Id.* at p. 6.  As to his official capacity claim, Plaintiff alleges Defendants "never isolated anyone or put anyone in quarantine," and that "Sevier County was fully aware of [their] serious medical conditions and deliberately chose to ignore and deny proper COVID-19 testing and medical care."  *Id.* at p. 7.

For his second claim, Plaintiff names all Defendants again alleging the denial or delay of

---

[2] This allegation directly contradicts several of Plaintiff's allegations that tests were administered on that date and inmates tested positive. As Judge Bryant's R&R states, this will not be considered further.
[3] Turn Key Health contracts with Sevier County Detention Center to provide medical services to inmates.  ECF No. 12.
[4] A separate case was opened for each inmate.  ECF No. 2.

medical care, but only indicates how Defendants Fowler and Gentry were personally involved in the alleged wrongful actions. *Id.* at p. 8. Plaintiff largely repeats the allegations in his first claim but provides additional details such as identifying Defendant's Fowler and Gentry as the staff that saw the inmates on August 10, 2022. *Id.* As to his official capacity claim, Plaintiff alleges that "Sevier County jail inmates were only checked/seen one time by the nurse," and that "after finally being tested for COVID-19" thirty out of thirty-six inmates, including Plaintiff, tested positive for COVID. Plaintiff further alleges that inmates suffered complications from the medication they were administered following the positive COVID tests. *Id.* at p. 10.

For Plaintiff's third claim, he again names all Defendants in this case alleging the denial of medical care, but does not indicate how each Defendant was personally involved in his claims. *Id.* at p. 10–11. Plaintiff alleges that Defendants were deliberately indifferent to the inmates' medical needs as they failed to administer COVID-19 tests despite clear symptoms and hid the infections from others. *Id.* at 11. As to his official capacity claim, Plaintiff repeats allegations that testing and medical care were denied. *Id.*

Plaintiff lists additional claims four through six, but these claims merely repeat his prior allegations with different characterizations of the claim such as "turned a blind eye," cruel and unusual punishment, and wanton infliction of pain. *Id.* at p. 12–17. Plaintiff seeks compensatory and punitive damages in the amount of $2.5 million dollars. *Id.* at 18.

On January 31, 2023, Defendant Fowler filed her Motion to Dismiss, or, in the alternative, Motion to Consolidate.[5] arguing that dismissal is appropriate as Plaintiff failed to plead sufficient facts to state a claim upon which relief may be granted against her. ECF No. 14, p. 1. On February 24, 2023, Defendant Foltz filed his Motion to Dismiss or Motion for Summary Judgment arguing that Plaintiff's claims should be dismissed against him pursuant Fed. R. Civ. P. 12(b)(6) and 56 because

---

[5] Defendant Fowler asks that this case be consolidated with *Luna v. Gentry*, Case No. 4:22-cv-04048, if her Motion to Dismiss is not granted. ECF No. 14.

4

material presented outside of the pleadings conclusively proves Defendant Foltz was not providing medical care at SCDC on the dates alleged in Plaintiff's Complaint.  ECF No. 22.

On March 30, 2023, Plaintiff filed responses to both Defendants Fowler and Foltz's Motions.  ECF Nos. 33, 34.  In Plaintiff's response to Defendant Fowler's Motion, he asserts that he contracted COVID-19 while under Defendant Fowler's care and that Defendant Fowler admits to being personally involved in his claims.  ECF No. 34.  In response to Defendant Foltz's Motion, Plaintiff provides a sworn affidavit and argues that, because Defendants' Answer (ECF No. 12) states that Defendant Foltz provided medical care at SCDC, Defendant Foltz was personally involved in his denial of medical care claims.  ECF No. 33.

On April 27, 2023, Judge Bryant issued the instant R&R.  ECF No. 35.  On May 15, 2023, Plaintiff filed a Motion for Extension of Time to File Response to the R&R.  ECF No. 36.  Then, on May 25, 2023, Plaintiff filed a Motion to Supplement his Amended Complaint.[6]  ECF No. 37.  After the Court granted Plaintiff's Motion for Extension of Time (ECF No. 38), Plaintiff filed his objections to the R&R on June 6, 2023.  ECF No. 40.

## II.  STANDARD OF REVIEW

The Court may designate a magistrate judge to hear pre- and post-trial matters and to submit to the Court proposed findings of fact and recommendations for disposition.  28 U.S.C. § 636(b)(1).  Within fourteen days of receipt of a magistrate judge's report and recommendation, "a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* Local Rule 72.2(VII)(C).  After conducting an appropriate review of the report and recommendation, the Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1).

---

[6] Plaintiff provides an Amended Complaint in his Motion.  ECF No. 37.  Defendants have moved to strike Plaintiff's Motion to Supplement Amended Complaint arguing that "it is impertinent and frivolous per Fed. R. Civ. P. 12(f)" and noting that "the proposed supplement fails to state a claim regarding the Plaintiff."  ECF No. 39.

5

"[T]he specific standard of review depends, in the first instance, upon whether or not a party has objected to portions of the report and recommendation." *Anderson v. Evangelical Lutheran Good Samaritan Soc'y*, 308 F. Supp. 3d 1011, 1015 (N.D. Iowa 2018). Generally, "objections must be timely and specific" to trigger *de novo* review. *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990). However, the Court may, in its discretion, conduct a *de novo* review of any issue in a report and recommendation. *Thomas v. Arn*, 474 U.S. 140, 154 (1985). The Court must apply a liberal construction when determining whether *pro se* objections are specific. *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995). Non-specific objections may require "full *de novo* review" if the record is concise. *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994) (requiring *de novo* review when the record was "strikingly brief," and the magistrate judge did not conduct a hearing). A "clearly erroneous" standard of review applies to the portions of a report and recommendation that are not objected to. *See Grinder v. Gammon*, 73 F.3d 93, 795 (8th Cir. 1996).

## III.  DISCUSSION

The Court will address Defendant Fowler's Motion to Dismiss, Plaintiff's individual capacity claims against all other named Defendants in Plaintiff's Second Amended Complaint, Plaintiff's official capacity claims, Defendant Foltz's Motion to Dismiss or Motion for Summary Judgment, and Plaintiff's relevant objections to Judge Bryant's R&R.

### A.  Defendant Fowler's Motion to Dismiss

In her Memorandum Brief filed in support of her Motion to Dismiss (ECF NO. 16), Defendant Fowler argues that "Plaintiff has failed to plead any facts from which deliberate indifference could be inferred." ECF No. 16, p. 6. Judge Bryant recommends that Plaintiff's individual capacity claims against Defendant Fowler be dismissed because Plaintiff fails to meet the second subjective prong of the deliberate indifference test. ECF No. 35, p. 8–9. The Court agrees with this recommendation.

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs in

6

violation of his Eighth Amendment[7] right to be free from cruel and unusual punishment. To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulaney v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. Vonwald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal citations omitted). Deliberate indifference may also be manifested "by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." *Estelle*, 429 U.S. at 104–05.

To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalli v. Correctional Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (internal citations omitted). A Plaintiff must show that an official "actually knew of but deliberately disregarded his serious medical need." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate

---

[7] The Eighth Amendment deliberate indifference standard applies to all denial of medical care claims including those by arrestees and pretrial detainees. *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012) (noting that while an arrestee's denial of medical care is properly analyzed under the Due Process Clause of the Fourteenth Amendment, the analysis parallels that under the Eighth Amendment).

7

treatment." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (internal citations omitted). Whether an inmate's condition is a serious medical need and whether an official was deliberately indifferent to the inmate's serious medical need are questions of fact. *Schaub*, 638 F.3d at 914 (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)).

The Court will accept as true Plaintiff's allegation that he tested positive for COVID-19. Thus, Plaintiff meets the objective prong of the deliberate indifference test. However, the Court agrees with Judge Bryant's conclusion that Plaintiff fails to meet the subjective prong of the deliberate indifference test.

Plaintiff's claims against Defendant Fowler are that, on August 10, 2022, after inmates started exhibiting and complaining of COVID-19 symptoms, Defendant Fowler came and told Plaintiff and his fellow inmates that they would shelter in place because "that was what the whole world decided was best," and that the inmates would not be quarantined because it would cause too much stress on the SCDC staff to separate them. Plaintiff further claims that three to four days later, Defendant Fowler told them she would administer COVID tests to the inmates, but that the inmates would be charged for the tests. Plaintiff alleges that Defendant Fowler gave him medication after testing positive for COVID that he quit taking after two days due to pains.

Plaintiff's allegations, at most, suggest mere negligence, which is not sufficient to sustain a deliberate indifference claim. *See e.g.*, *Hill v. Page*, Case No. 321CV00046BRWJJV, 2021 WL 2677359, at *3 (E.D. Ark. June 8, 2021), *report and recommendation adopted*, Case No. 321CV00046BRWJJV, 2021 WL 2666851 (E.D. Ark. June 29, 2021), *aff'd*, No. 21-2782, 2021 WL 6808426 (8th Cir. Dec. 23, 2021) (prisoner's allegation that Arkansas Division of Correction ("ADC") official violated Eighth Amendment rights by failing to follow COVID-19 protocols on two occasions and failing to protect him for contracting COVID-19 suggests negligence at most); *Tate v. ADC*, 4:20-cv-558-BSM-BD, 2020 WL 7367864 at *9–10 (E.D. Ark. Dec. 15, 2020) (prisoner's allegation that ADC officials acted negligently in failing to prevent the spread of COVID-19 was

8

insufficient to state a deliberate indifference claim), *recommendation adopted*, 2020 WL 7367864 (E.D. Ark. Dec. 15, 2020); *Johnson v. Entzel*, No. 21-1013-JBM, 2021 WL 231732, at *2 (C.D. Ill. Jan. 22, 2021) (plaintiff's allegations about "a lack of social distancing and inconsistent mask use at the prison do not suggest that the conditions of plaintiff's confinement are inhumane or that defendants are acting with deliberate indifference to a significant risk of harm to plaintiff's health or safety").

In his objections, Plaintiff largely repeats his allegations against Defendant Fowler from his Second Amended Complaint. He actually describes the conduct as "negligence" when stating that SCDC officials "were aware of the negligence that was occurring." ECF No. 40, p. 8. In his objections, Plaintiff lists valid legal assertions from cases regarding the deliberate indifference test. *Id.* at p. 10–12. Citing to *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) a number of times, Plaintiff states that "the fact that a condition or risk was obvious is circumstantial evidence that will permit a judge or jury to conclude that defendant did know about the COVID-19 virus, even if there is no direct evidence." Though Plaintiff's assertion is correct, the facts in *Farmer* are markedly different and do not further any legal argument Plaintiff is attempting to make to keep his claims against Defendant Fowler alive. In *Farmer*, the United States Supreme Court found that prison officials, who were involved in transferring a transsexual prisoner to a maximum-security facility where the prisoner was allegedly raped and assaulted by other prisoners, were not entitled to summary judgment on claims that officials had shown deliberate indifference to the prisoner. Here, as discussed above, Defendant Fowler's alleged actions, at most, constitute negligence.

Also in his objections, Plaintiff cites to *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543 (6th Cir. 2009), a case involving a prisoner suffering from heat exhaustion. Plaintiff draws a conclusion from this dissimilar case and states that, "as a trained medical professional, a registered nurse was aware or should have been aware of such danger when inmates were complaining of COVID-19

symptoms." However, the facts show that Defendant Fowler did respond to inmates' complaints by telling the inmates to shelter in place, testing them, and providing medication. While she may have been negligent, her actions do not equate to deliberate indifference in violation of Plaintiff's Eighth Amendment rights. Thus, the Court agrees with Judge Bryant's recommendation and Defendant Fowler's Motion to Dismiss (ECF No. 22) should be granted.

### B. Individual Capacity Claims Against All Other Named Defendants

Judge Bryant recommends that Plaintiff's individual capacity claims against all remaining Defendants be dismissed. The Court agrees with this recommendation.

In his Second Amended Complaint, Plaintiff failed to state how any of the named Defendants other than Defendant Fowler were personally involved in any violation of his constitutional rights. "Liability under Section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370 (1976)). Thus, to state a cognizable Section 1983 claim, a complaint must set forth specific factual allegations showing what each named defendant did, or failed to do, that allegedly violated the plaintiff's constitutional rights. Plaintiff has not alleged a casual link between any of the remaining named Defendants and his claims. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (finding that even a *pro se* plaintiff must allege specific facts sufficient to state a claim).

In his objections, Plaintiff reasserts allegations from his Second Amended Complaint (ECF No. 9) but provides more detail of how Defendants played a part in his allegations, such as how Defendant Barbera Valentine ("Valentine") was "the jailer who responded to the call button," and how Defendant Brandon Williams ("Williams") ignored another inmate's request to have his temperature taken. ECF No. 40, p. 1–2. In fact, Plaintiff alleges facts that contradict his Second Amended Complaint, such as that Defendant Williams was the one who took the inmates' temperatures, not Defendant Fowler. *Id.* at p. 2–3. Plaintiff provides contradictory facts that do not remedy his failure to allege specific facts sufficient to state a claim. Accordingly, the Court finds

10

that the remainder of Plaintiff's individual capacity claims must be dismissed.

### C. Official Capacity Claims

Judge Bryant recommends that Plaintiff's official capacity claims be dismissed. The Court agrees with this recommendation.

Depending on which portion of each claim is referenced, either over the course of one day or three to four days, Plaintiff alleges that the SCDC staff failed to take preventative measures when they knew COVID was in the building. He alleges that PPE, cleaning supplies, and testing were not provided in a timely manner and asserts that he was given medication not approved by the CDC that gave him pains.

Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). A governmental entity can be held liable only when the constitutional violation was caused by a policy, custom, or failure to train or supervise. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To sustain an official capacity claim against such entity a plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (2006).

Plaintiff does not identify any policy of SCDC responsible for any of his official capacity claims. The Court agrees with Judge Bryant's recommendation that Plaintiff's allegations concerning the lack of COVID response and the denial of medical care over a period of at most four days, is insufficient to establish the existence of an unconstitutional custom. *See Johnson v. Douglas County Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (To establish the existence of an unconstitutional custom, incidents must occur "over a course of time sufficiently long to permit notice of, and then deliberate indifference to or tacit authorization of, the conduct by policymaking officials.").

In his objections, Plaintiff again reasserts his allegations from his Second Amended

Complaint and fails to identify any policy, custom, or official action of SCDC responsible for his official capacity claims. Thus, Plaintiff's official capacity claims must be dismissed.

### D. Defendant Foltz's Motion

Based on the above analysis and agreeing with Judge Bryant's R&R, Defendant Foltz's Motion to Dismiss or Motion for Summary Judgment is now moot. Plaintiff does not specifically object to this recommendation. Consequently, Defendant Foltz's Motion (ECF No. 22) is hereby denied as moot without prejudice as to refiling.

### IV. CONCLUSION

Upon *de novo* review of the Report and Recommendation, and for the reasons discussed above, the Court finds that Plaintiff has offered neither fact nor law which would cause the Court to deviate from Judge Bryant's Report and Recommendation. Therefore, the Court overrules Plaintiff's objections (ECF No. 40) and adopts the Report and Recommendation *in toto*. ECF No. 35. Accordingly, Defendant Fowler's Motion to Dismiss (ECF No. 14) is **GRANTED**. Defendant Foltz's Motion to Dismiss or Motion for Summary Judgment (ECF No. 22) is **DENIED** as **MOOT WITHOUT PREJUDICE AS TO REFILING**. Plaintiff's Second Amended Complaint (ECF No. 9) is **DISMISSED WITHOUT PREJUDICE**. Further, Plaintiff's Motion to Supplement Amended Complaint (ECF No. 37) is **DENIED** and this case is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**, this 29th day of September, 2023.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge